APPEAL NUMBER 13-3537

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

UNITED STATES OF AMERICA,
                          Appellee

V.

THOMAS REYES,
                          Appellant

REPLY BRIEF FOR APPELLANT

Appeal from Order and Memorandum Entered on
August 9, 2013, in the United States District Court for the
Eastern District of Pennsylvania, at Criminal Number 06-cr-00654-1
by the Honorable John R. Padova

KEITH M. DONOGHUE
Assistant Federal Defender

SARAH S. GANNETT
Assistant Federal Defender

BRETT G. SWEITZER
Assistant Federal Defender
Chief of Appeals

LEIGH M. SKIPPER
Chief Federal Defender

Federal Community Defender Office
For the Eastern District of Pennsylvania
Suite 540 West - Curtis Center
601 Walnut Street
Philadelphia, PA  19106
(215) 928-1100

# TABLE OF CONTENTS

**PAGE**

Table of Authorities............................................. iii

Argument....................................................... 1

The rule announced in *Alleyne v. United States* — or at
least that rule's reasonable doubt component — applies
retroactively in proceedings on a federal prisoner's motion
under 28 U.S.C. § 2255...................................... 1

A. *Alleyne*'s rule that facts essential to a mandatory minimum must be
proved beyond a reasonable doubt is a watershed rule of criminal
procedure.................................................. 2

    1. *Alleyne* must be applied retroactively to settle "serious
questions about the accuracy of guilty verdicts in past
trials.".............................................. 4

    2. The requirement that facts essential to punishment be proved
beyond a reasonable doubt is an expression of fundamental
procedural fairness.................................... 9

        a. The significance of *Alleyne* cannot be set aside on the
view that it concerns "merely" punishment........... 10

        b. The distinction between "structural" and non-structural
error does not weigh against retroactive application of
*Alleyne*'s reasonable doubt rule................... 12

        c. *Alleyne* has sweeping significance both as a
constitutional and as a practical matter............. 14

B. *Teague*'s extremely restrictive test should not be adopted for purposes
of federal criminal cases............................... 19

i

# TABLE OF CONTENTS CONTINUED

**PAGE**

    1.     A panel of this Court is not bound to apply *Teague*.. . . . . . . 21

    2.     *Alleyne* should be given effect on a first-time Section 2255 motion filed within the statute of limitations.. . . . . . . . . . . 23

Conclusion.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Certificate of Bar Membership

Certification

Certificate of Compliance

Certificate of Service

ii

# TABLE OF AUTHORITIES

FEDERAL CASES                                                     PAGE

*Alleyne v. United States*, 133 S. Ct. 2151 (2013). . . . . . . . . . . . . . . . . . . . . . passim

*Apprendi v. New Jersey*, 530 U.S. 466 (2000). . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Arizona v. Fulminante*, 499 U.S. 279 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Barber v. Thomas*, 560 U.S. 474 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Beard v. Banks*, 542 U.S. 406 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Blakely v. Washington*, 542 U.S. 296 (2004). . . . . . . . . . . . . . . . . . . . . . 6, 11, 18

*Cage v. Louisiana*, 498 U.S. 39 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Chaidez v. United States*, 133 S. Ct. 1103 (2013). . . . . . . . . . . . . . . . . . . . . . . . 21

*Cunningham v. California*, 549 U.S. 270 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Danforth v. Minnesota*, 552 U.S. 264 (2008). . . . . . . . . . . . . . . . . . 2, 21, 22, 23

*Desist v. United States*, 394 U.S. 244 (1969). . . . . . . . . . . . . . . . . . . . . . . . 26, 27

*Duncan v. United States*, 552 F.3d 442 (6th Cir. 2009). . . . . . . . . . . . . . . . . . . 23

*George Harms Construction Co. v. Chao*, 371 F.3d 156 (3d Cir. 2004). . . . . . . . 23

*Hankerson v. North Carolina*, 432 U.S. 233 (1977). . . . . . . . . . . . . . . . . . . . . . . 7

*Harris v. United States*, 536 U.S. 545 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Ivan V. v. City of New York*, 407 U.S. 203 (1972). . . . . . . . . . . . . . . . . . . . . . . . . 7

*Johnson v. New Jersey*, 384 U.S. 719 (1966). . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Johnson v. Zerbst*, 304 U.S. 458 (1938). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Lafler v. Cooper*, 132 S. Ct. 1376 (2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Linkletter v. Walker*, 381 U.S. 618 (1965). . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 27

*Lloyd v. United States*, 407 F.3d 608 (3d Cir. 2005). . . . . . . . . . . . . . . . . . 2, 3, 22

*Mackey v. United States*, 91 S. Ct. 1171 (1971). . . . . . . . . . . . . . . 7, 19, 25, 26, 27

*Mullaney v. Wilbur*, 421 U.S. 684 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Neder v. United States*, 527 U.S. 1 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Nelson v. United States*, 555 U.S. 350 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Reina-Rodriguez v. United States*, 655 F.3d 1182 (9th Cir. 2011). . . . . . . . . . . . 23

*Reinhold v. Rozum*, 604 F.3d 149 (3d Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*Schriro v. Summerlin*, 542 U.S. 348 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 6

*Simpson v. United States*, 721 F.3d 875 (7th Cir. 2013). . . . . . . . . . . . . . . . . . . . 24

*Stovall v. Denno*, 388 U.S. 293 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Sullivan v. Louisiana*, 508 U.S. 275 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Teague v. Lane*, 489 U.S. 288 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*In re Turner*, 267 F.3d 225 (3d Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Tyler v. Cain*, 533 U.S.656 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 28

# TABLE OF AUTHORITIES CONTINUED

PAGE

*United States v. Adams*, 252 F.3d 276 (3d Cir. 2001). . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Agurs*, 427 U.S. 97 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Barbosa*, 271 F.3d 438 (3d Cir. 2001). . . . . . . . . . . . . . . . . . . . 15

*United States v. Booker*, 543 U.S. 220 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006). . . . . . . . . . . . . . . . . 12, 13

*United States v. Grier*, 475 F.3d 556 (3d Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Henry*, 282 F.3d 242 (3d Cir. 2002). . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Jenkins*, 333 F.3d 151 (3d Cir. 2003). . . . . . . . . . . . . . . . . . . . 3, 4

*United States v. Korey*, 472 F.3d 89 (3d Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Ottaviano*, 738 F.3d 586 (3d Cir. 2013). . . . . . . . . . . . . . . . . . . 12

*United States v. Pena*, 742 F.3d 508 (1st Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Resendiz-Ponce*, 549 U.S. 102 (2007). . . . . . . . . . . . . . . . . . . . 14

*United States v. Spinner*, 180 F.3d 514 (3d Cir. 1999). . . . . . . . . . . . . . . . . . . . . 14

*United States v. Swinton*, 333 F.3d 481 (3d Cir. 2003). . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Tomko*, 562 F.3d 558 (3d Cir. 2009). . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Vazquez*, 271 F.3d 93 (3d Cir. 2001). . . . . . . . . . . . . . . . . . . 15, 18

*Whorton v. Bockting*, 549 U.S. 406 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

                                                              **PAGE**

*In re Winship*, 397 U.S. 358 (1970). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim


**STATE CASES**                                               **PAGE**

*Policano v. Herbert*, 859 N.E.2d 484 (N.Y. 2006). . . . . . . . . . . . . . . . . . . . . . . 23


**FEDERAL STATUTES**                                          **PAGE**

18 U.S.C. § 924(c)(1)(A)(iii).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 29

18 U.S.C. § 3553(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 25

28 U.S.C. § 2244. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

28 U.S.C. § 2255. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim


**OTHER AUTHORITIES**                                         **PAGE**

Gary T. Lowenthal, *Mandatory Sentencing Laws: Undermining the Effectiveness
    of Determinate Sentencing Reform*, 81 Cal. L. Rev. 61 (1993). . . . . . . . . . . . . 17

United States Sentencing Commission, *Report to the Congress: Mandatory
    Minimum Penalties in the Federal Criminal Justice System*
    (October 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 19

William M. Beaney, *The Right to Counsel: Past, Present, and Future*, 49 Va. L.
    Rev. 1150 (1963). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

# ARGUMENT

**The rule announced in *Alleyne v. United States* — or at least that rule's reasonable doubt component — applies retroactively in proceedings on a federal prisoner's motion under 28 U.S.C. § 2255.**

The government fails to come to grips with the truth that *Alleyne v. United States* gives force to the bedrock rule that all facts essential to guilt — be it guilt of an aggravated offense or a simple one — must be proved beyond a reasonable doubt. Instead, the government attempts to resurrect a distinction between guilt and punishment that *Alleyne* rejects. From this discredited perspective, the government would depict *Alleyne* as an "incremental" development in the law that does not warrant "watershed" status.

The government's argument neglects the fundamental importance of *Alleyne*'s guarantee. To impose a mandatory minimum based on a fact not proved beyond a reasonable doubt is to punish the defendant for a more serious crime than any of which he has been found guilty. *Alleyne*, 133 S. Ct. at 2162-63; Opening Br. 34. Given the purpose of the reasonable doubt standard, we must fear it is also to punish the defendant for a crime of which he is in fact innocent. Because *Alleyne* rectifies this grave injustice, it qualifies as a "watershed rule" within the meaning of *Teague v. Lane*, 489 U.S. 288 (1989).

As to whether *Teague* should be applied in federal criminal cases, as distinct from proceedings on a state prisoner's petition for habeas corpus, the government resists a pragmatic approach. It contends that a focus on practicability would be unfair to state prisoners and unduly threaten interests in finality. Neither point is well taken. Setting *Teague* to the side would simply permit federal courts to treat retroactivity in the same way the States may and do in their own courts. *See Danforth v. Minnesota*, 552 U.S. 264 (2008). A pragmatic approach would not substantially undermine the interest in finality, because correcting *Alleyne* error does not require any extraordinary investment of judicial resources or upset any valid reliance interests. *See* Opening. Br. 47-50. Yet for an exceptionally small class of prisoners to whom relief might be available, retroactive application would vindicate a bedrock constitutional right by terminating punishment they continue to endure for offenses of which they were never convicted in fact or law.

**A.** ***Alleyne*'s rule that facts essential to a mandatory minimum must be proved beyond a reasonable doubt is a watershed rule of criminal procedure.**

The government submits that precedent dictates the outcome of this case, even going so far as to read into Mr. Reyes' brief a petition for hearing en banc.

*See* Gov't Br. 28 n.10.  In fact, this Court has reserved the question before it.[1]  In

*Lloyd v. United States*, 407 F.3d 608 (3d Cir. 2005), the Court contemplated that

the reasonable doubt standard's essential role in safeguarding accuracy and

fairness might call for retroactive application of rules giving force to this

fundamental guarantee.  *See* 407 F.3d at 615.  The Court went on to reason that the

question was not presented in the case before it due to the unusual combination of

opinions in *United States v. Booker*, 543 U.S. 220 (2005).  *See* Opening Br. 30-31.

Apart from *Lloyd*, the decisions cited by the government no longer carry

precedential force on the issue raised here.  In all of them, panels overlooked that

"what matters for constitutional purposes" is not "innocence" or "guilt" in the

abstract, but "facts increasing punishment."  *Lloyd*, 407 F.3d at 614-15.  This

mistake was essential to the Court's retroactivity holding in each of *United States*

*v. Swinton*, 333 F.3d 481 (3d Cir. 2003), *United States v. Jenkins*, 333 F.3d 151

(3d Cir. 2003), and *Reinhold v. Rozum*, 604 F.3d 149 (3d Cir. 2010).  *See* Opening

Br. 31; *id.* 32 n.16.  As *Lloyd* makes clear, these decisions are therefore without

authority under *Schriro v. Summerlin*, 542 U.S. 348 (2004), which established

---

[1]     On a first-time Section 2255 motion such as this one, it is the
presiding court (be it District or Circuit), not the Supreme Court, which must
decide retroactivity for purposes of determining whether the motion is timely
under the provision now at 18 U.S.C. § 2255(f)(3).  *See United States v. Swinton*,
333 F.3d 481, 485-87 (3d Cir. 2003) (citing and discussing cases).

"that the 'watershed rule' exception can apply to a procedural rule that only affects sentencing."  *Lloyd*, 407 U.S. at 614.

The government says *Reinhold v. Rozum* did not rest on the "erroneous conclusion that a rule that affects only sentencing cannot be a watershed rule." Gov't Br. 51.  The government is wrong.  What *Reinhold* said was that the rule of *Cunningham v. California*, 549 U.S. 270 (2007), does not qualify because its "'application affects only the enhancement of a defendant's sentence after he or she has already been convicted by proof beyond a reasonable doubt.'"  604 F.3d at 155 (quoting *Jenkins,* 333 F.3d at 154).  Accordingly, *Reinhold* carries no more authority than the *Swinton* and *Jenkins* decisions.

### 1.   *Alleyne* **must be applied retroactively to settle "serious questions about the accuracy of guilty verdicts in past trials."**

Turning to the merits of the open question raised on this appeal, the government says that transgression of the rule of *Alleyne* does not satisfy the first criterion of a "watershed rule" under *Teague* because it "does not create an impermissibly large risk of inaccuracy."  Gov't Br. 10.  This is untenable as a matter of law.

By definition, a failure to honor the reasonable doubt standard creates an impermissibly large risk of inaccuracy by leaving too great a "margin of error":

> There is always in litigation a margin of error, representing error in factfinding, which both parties must take into account. Where one party has at stake an interest of transcending value — as a criminal defendant his liberty — this margin of error is reduced as to him by the process of placing on the other party the burden of persuading the factfinder at the conclusion of the trial of his guilt beyond a reasonable doubt.

*In re Winship*, 397 U.S. 358, 364 (1970) (internal quotation marks omitted). In the context of mandatory minimums, this intolerable margin — which is to say, this impermissibly large risk — is that the defendant will suffer an increased quantum of punishment for an aggravated crime of which he was not found guilty. In the present case, for example, the fact of "discharge," though not found proven beyond a reasonable doubt, doubled the mandatory consecutive term from five to ten years. *See* Opening Br. 7-8, 11. And even were the increase not so dramatic, any "time behind bars is not some theoretical or mathematical concept. It is something real, even terrifying." *Barber v. Thomas*, 560 US 474, 504 (2010) (Kennedy, J., dissenting, joined by Stevens and Ginsburg, JJ.).

Contrary to the government's submission, *Alleyne* did not "focus[] primarily on the jury trial requirement" as distinct from the reasonable doubt standard.

Gov't Br. 43.  Rather, *Alleyne* referred at each critical juncture in its exposition to the requirement that elemental facts be found by "the jury beyond a reasonable doubt."  133 S. Ct. at 2156; *id*. at 2158; *id*. at 2163; *see also id*. at 2160.  Indeed, it is precisely *because of* the reasonable doubt standard that the deprivation of a defendant's right to trial by jury cannot be said to "so seriously diminish[] accuracy" as to require retroactive correction.  *Schriro v. Summerlin*, 542 U.S. 348, 355-56 (2004) (internal quotation marks omitted).  We trust judges and juries alike to be capable of holding the government to its heightened burden by a careful sifting of the evidence.  It is also for this reason that, whereas the jury trial right has enjoyed only a "mixed reception" in other countries, *id.* at 356, the requirement of proof beyond a reasonable doubt is "rightly one of the boasts of a free society," *Winship*, 397 U.S. at 362.

By contrast, the preponderance standard lends itself to unduly lax application, being "susceptible" to the notion that no more is needed than "an abstract weighing of the evidence in order to determine which side has produced the greater quantum."  397 U.S. at 367-68.[2]  Given this recurring tendency, it is

---

[2]        The government correctly points out that in *Winship* the Court identified this description of the preponderance standard as a "misinterpretation." Gov't Br. 41.  While counsel regrets that the opening brief obscured this nuance, the Court's statement as a whole nonetheless bears out the original point: that the

(continued...)

6

bracing to consider that, before *Alleyne*, mandatory minimums could be imposed based on "facts extracted after trial from a report compiled from a probation officer who the judge thinks more likely got it right than got it wrong." *Blakely v. Washington*, 542 U.S. 296, 312 (2004).

In light of the uncertain protection afforded by preponderance findings, cases like *Ivan V. v. City of New York*, 407 U.S. 203 (1972), and *Hankerson v. North Carolina*, 432 U.S. 233, 243 (1977), concluded that violation of the reasonable doubt standard "*substantially* impairs [a criminal trial's] truth-finding function and so raises *serious* questions about the accuracy of guilty verdicts in past trials." *Hankerson*, 432 U.S. at 243 (emphases in original); *Ivan V.*, 407 U.S. at 204; *see* Opening Br. 23-24. The government proposes to write off *Ivan V.* and *Hankerson* on the ground that they arose on direct appeal and preceded *Teague*. Gov't Br. 45. But at the time *Ivan V.* and *Hankerson* were decided, federal courts did not distinguish between direct and collateral review for retroactivity purposes. *See Mackey v. United States*, 91 S. Ct. 1171 (1971) (Harlan, J., concurring in

---

[2](...continued)
preponderance standard, whatever it may properly require, is "susceptible" to application in a manner that erodes the presumption of innocence. Justice Harlan's concurring opinion in *Winship* confirms that this tendency is a recurring one. *See* 397 U.S. at 371 n.3.

judgment).[3] And though *Ivan V.* and *Hankerson* were decided before *Teague*, each held reasonable doubt rules retroactive under the same accuracy-diminishing standard today embodied in *Teague*'s first prong. *See* Opening Br. 23-24.

The government insists that the reasonable doubt standard, despite its "nearly complete and long-standing acceptance … by the States in criminal trials," is not really as essential as one might think. *Winship*, 397 U.S. at 372 (Harlan, J. concurring). In this connection, the government notes first that matters such as the validity of a *Miranda* waiver or the voluntariness of consent to search are decided on a preponderance standard. Gov't Br. 41-42. But at stake in these sorts of preliminary rulings is only whether the jury will be permitted to consider certain pieces of evidence, not whether the evidence as a whole should subject a defendant to criminal punishment. Accordingly, such rulings do not implicate the same "interest of transcending value" as the reasonable doubt standard protects when it comes to criminal punishment itself. *Winship*, 397 U.S. at 364.

The government next claims that "most criminal sentences are imposed solely on the basis" of preponderance findings. Gov't Br. at 44. At this late date,

---

[3]     Justice Harlan entered his influential opinion not only in *Mackey* but in the cases of *Williams v. United States* and *Elkanich v. United States*, each of which is reported at 401 U.S. 646 (1971). Because citation to the United States Reports pulls up several opinions, this brief cites to West's Supreme Court Reporter for Justice Harlan's opinion.

nearly a decade after *Booker*, that assertion is difficult to understand. What

*Alleyne* holds is that all facts essential to punishment must be proved beyond a

reasonable doubt. 133 S. Ct. at 2163. A preponderance standard applies only to

ancillary findings that yield an advisory Sentencing Guidelines range, which it is

reversible error for a judge to presume reasonable. *Nelson v. United States*, 555

U.S. 350 (2009). The judge may give more, less, or no weight to any particular

fact as necessary to find and fashion the sentence that is "sufficient but not greater

than necessary." 18 U.S.C. § 3553(a)(1). Under this contemporary regime,

preponderance findings must not determine the punishment, and no sentence may

be imposed "solely on the basis" of them. Gov't Br. 44.

The reasonable doubt standard expresses the "fundamental value

determination of our society that it is far worse to convict an innocent man than to

let a guilty man go free." *Winship*, 397 U.S. at 372 (Harlan, J., concurring).

Because the standard's very purpose is to reduce what would otherwise be an

impermissibly large risk of injustice, the government's argument as to *Teague*'s

first prong must fail.

> **2.     The requirement that facts essential to punishment be
> proved beyond a reasonable doubt is an expression of
> fundamental procedural fairness.**

The government focuses for the most part on *Teague*'s second prong,

requiring that a new rule "alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding." *Tyler v. Cain*, 533 U.S.656, 665 (2001) (internal quotation marks and emphasis omitted).[4] Yet the government's brief breaks no new ground in this respect, instead drawing on three infirm rationales reviewed in the opening brief. *See* Opening Br. 33-36.

> a. **The significance of *Alleyne* cannot be set aside on the view that it concerns "merely" punishment.**

The government persists in the view that the non-harmless error in this case should not be corrected because it "does not call into question whether [the defendant] is guilty of an offense," but "only the extent of punishment." Gov't Br. 38-39. The government further contends that the error's significance is diminished by judicial discretion to impose a sentence of the same length as an erroneously imposed mandatory minimum. *Id.* 39.

Not only is the government's submission contrary to *Lloyd* and *Summerlin*, as discussed above, but it dismisses the very point of *Alleyne,* which is that to

---

[4] On the subject of *Tyler*, the government takes exception with the opening brief's interpretation of that decision as countenancing a "colorable" argument that rules giving force to the reasonable doubt standard should be applied retroactively under *Teague*. Gov't Br. 37 n.16; *see* Opening Br. 25. As the government's own exposition confirms, however, this reading merely takes the *Tyler* majority at its word that an argument could be made that the Court "should make [*Cage v. Louisiana*, 498 U.S. 39 (1990)] retroactive to cases on collateral review." Gov't Br. 37 n.16 (quoting *Tyler*, 533 U.S. at 666).

impose a mandatory minimum based on facts not found proven beyond a reasonable doubt punishes the defendant for a crime greater than the one of which he was actually accused and for which he stood trial. *See Alleyne*, 133 S. Ct. at 2162-63. A defendant's guilt of some lesser included offense does not make this result any less intolerable. Indeed, when it comes to a provision increasing the minimum sentence from five to 10 years, as does 18 U.S.C. § 924(c)(1)(A)(iii), the distinction between the aggravated and the non-aggravated offense "may be of greater importance than the difference between guilt or innocence for many lesser crimes." *Mullaney v. Wilbur*, 421 U.S. 684, 698 (1975).

Under the government's discredited position, it would be enough for the government to prove the elements of *any* crime beyond a reasonable doubt as a "mere preliminary" to a preponderance inquiry "into the facts of the crime the State *actually* seeks to punish." *Blakely*, 542 U.S. at 307. This is no less problematic when the punishment takes the form of a mandatory minimum rather than a statutory maximum. In fact, it may be more problematic, for as the government notes, defendants are ordinarily sentenced to terms well below the statutory maximum, Gov't Br. 44, whereas a heightened mandatory minimum empowers the prosecution "to require the judge to impose a higher punishment than he might wish." *Alleyne*, 133 S. Ct. at 2161 (internal quotation marks

omitted).  In more than 90 percent of Section 924(c)(1)(A) cases, judges decline to

impose even one day more than the mandatory minimum sentence.  *See* United

States Sentencing Commission, *Quick Facts: Section 924(c) Offenses*.[5]  It is thus

hardly an answer to the watershed-rule inquiry to observe that there may exist the

occasional case in which a judge exercising his or her own discretion would agree

with the prosecutor that a prison term equal in length to the mandatory minimum is

warranted.

> **b**.     **The distinction between "structural" and non-structural error does not weigh against retroactive application of *Alleyne*'s reasonable doubt rule.**

According to the government, transgression of the rule of *Alleyne* is not

"structural error" and therefore should be held to fail *Teague*'s second prong.

*See* Gov't Br. 10; *id.* 34-37.  Even granting the first premise, this is a false

syllogism.  Some errors that are not structural are without a doubt offensive to

fundamental fairness.  *See United States v. Agurs*, 427 U.S. 97, 103 (1976)

(prosecution's knowing use of perjured testimony); *Arizona v. Fulminante*, 499

U.S. 279, 310 (1991) (admission of defendant's coerced confession); *United States

v. Ottaviano*, 738 F.3d 586, 596 (3d Cir. 2013) (improper judicial cross-

---

[5]     The Commission's summary is available at:
http://www.ussc.gov/Quick_Facts/Quick_Facts_Section_924c_Offenders.pdf.

examination conveying strong dubiousness of defense to jury).

As these examples make clear, the doctrine of structural error is not concerned with the gravity of the error, and is entirely distinct from *Teague*'s "watershed rule" test. Rather, error is "structural" depending on the "difficulty of assessing the effect of the error." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 149 n.4 (2006). Accordingly, signature examples of structural error include denial of the right to self-representation or the right to a public trial, *see Fulminante*, 499 U.S. at 310, neither of which could be said to satisfy both prongs of *Teague*. What makes them structural is that they have "consequences that are necessarily unquantifiable and indeterminate." *Sullivan v. Louisiana*, 508 U.S. 275, 282 (1993).

By contrast, to say that error is non-structural is to say that its effect may "be quantitatively assessed in the context of other evidence presented in order to determine whether [it was] harmless *beyond a reasonable doubt*." *Gonzalez-Lopez*, 548 U.S. at 148-49 (internal quotation marks omitted; emphasis added); *see Neder v. United States*, 527 U.S. 1, 19 (1999). If the reviewing court cannot reach that conclusion, then the conviction must be reversed. *See United States v. Korey*, 472 F.3d 89, 96 (3d Cir. 2007). Thus, the very test for distinguishing harmless from non-harmless error turns on the reasonable doubt standard. Whereas

structural error requires reversal because it is not possible to say how the error affected the trial, error that cannot be found harmless beyond a reasonable doubt requires reversal because it is too likely the trial was unfair. That the reasonable doubt standard serves this purpose on appeal is one more proof of how fundamental it is, and of why this component of *Alleyne* satisfies *Teague*'s second prong.[6]

> c. ***Alleyne* has sweeping significance both as a constitutional and as a practical matter.**

Most persistently, the government submits that *Alleyne* does not satisfy the "fairness" prong of *Teague*'s watershed rule test because it did not alter the "concept of the reasonable doubt rule," but "merely extended it." Gov't Br. 10; *see also id.* 32, 34, 38, 40, 48. This argument rests on a failure to apprehend the reach of *Alleyne*.

---

[6]    Though not essential to the resolution of this appeal, the government is also too quick to presume that *Alleyne* error is *not* structural in nature. It is at least an open question whether a federal indictment's failure to charge an essential element — as required by *Alleyne*, *see* 133 S. Ct. at 2161 — is subject to review for harmlessness. *See United States v. Resendiz-Ponce*, 549 U.S. 102, 103 (2007) (noting that certiorari had been granted on issue, but resolving case on different basis); *id.* at 111 (Scalia, J., dissenting) (concluding that omission of essential element from indictment is structural error); *United States v. Spinner*, 180 F.3d 514 (3d Cir. 1999) (ordering dismissal, *sua sponte*, where indictment failed to charge element). Unlike the government, however, Mr. Reyes does not contend that the law in this area has any bearing on retroactivity.

To start with, the government's effort to minimize the significance of *Alleyne*, and before it *Apprendi v. New Jersey*, 530 U.S. 466 (2000), flies in the face of nearly 15 years of judicial experience. Every jurist knows the revolution *Apprendi* wrought. In this Court, *Apprendi* occasioned two *en banc* decisions within 18 months and, along with its progeny, further *en banc* attention continuing through the end of the last decade. *See United States v. Vazquez*, 271 F.3d 93 (3d Cir. 2001) (en banc), *United States v. Barbosa*, 271 F.3d 438 (3d Cir. 2001) (en banc); *United States v. Grier*, 475 F.3d 556 (3d Cir. 2007) (en banc); *United States v. Tomko*, 562 F.3d 558 (3d Cir. 2009) (en banc). It was early on in this sequence that Judge Becker began one opinion by writing, "[t]his is yet another *Apprendi* case." *United States v. Henry*, 282 F.3d 242, 243 (3d Cir. 2002). "[S]uffice it to say," the Court observed three months after *Apprendi*, "that the case has generated quite a stir in the legal community, and has important implications for the conduct of criminal trials and sentencing." *In re Turner*, 267 F.3d 225, 227 (3d Cir. 2001).

While Justice O'Connor's noted description of *Apprendi* as a "watershed change in constitutional law," 530 U.S. at 524, may not represent a formal conclusion as to retroactivity, *see* Gov't Br. 51-52, it does express the sweeping character of the *Apprendi/Alleyne* rule. In essence, *Apprendi* announced a new constitutional limitation on legislative authority in each of the fifty states, and on

15

Congress, by removing from lawmakers the authority to distinguish "elements" from "sentencing factors." *See Apprendi*, 530 U.S. at 525 (O'Connor, J., dissenting); *id.* at 490-92 (majority opinion). By requiring that *any* fact exposing the defendant to greater punishment be found by a jury beyond a reasonable doubt, *Apprendi* revamped several of the Fifth and Sixth Amendments' fair trial guarantees.

*Alleyne*, in turn, recognized that punishment is defined — indeed, *offenses* themselves are defined — by the statutory minimum as well the statutory maximum. *Alleyne*, 133 S. Ct. at 2161-63. Before *Alleyne,* we did not understand that when its rule is violated, the defendant is punished for a "*separate* crime," one for which he has neither stood trial nor been found guilty. *United States v. Pena*, 742 F.3d 508, 517 (1st Cir. 2014) (emphasis in original). *Alleyne* thus eliminated a gaping exception that had left the government free of its proper burden to prove all facts essential to guilt beyond a reasonable doubt. It is no overstatement to say that its rule, in bringing an end to such error, "constitutes a previously unrecognized bedrock procedural element that is essential to the fairness of a proceeding." *Whorton v. Bockting*, 549 U.S. 406, 421 (2007).

In a practical sense, *Alleyne*'s effect may be greater than *Apprendi*'s. As the government notes, sentences at the statutory maximum are rare. *See* Gov't Br. 44.

But in present-day practice, mandatory minimums are common: 27 percent of federal cases in which a defendant is sentenced involve conviction of an offense carrying a mandatory minimum penalty — nearly 20,000 cases in all. *See* United States Sentencing Commission, *Report to the Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System* 121 (October 2011) [hereinafter *USSC Mandatory Minimum Report*]. The vast majority of States have also enacted mandatory minimums. *See* Gary T. Lowenthal, *Mandatory Sentencing Laws: Undermining the Effectiveness of Determinate Sentencing Reform*, 81 Cal. L. Rev. 61, 64-65 (1993) ("By 1990, forty-six states had enacted mandatory sentence enhancement laws, and most states had a wide variety of these provisions.").[7]

The government endeavors to contrast *Alleyne*'s rule with the extension of the right to counsel marked by *Gideon v. Wainwright*, insisting that the latter has a "sweep and importance" which *Alleyne* supposedly lacks. Gov't Br. 10; *id.* 33. Yet just like *Gideon*, *Alleyne* applies in every felony case and "affects every stage

---

[7] Despite the prevalence of mandatory minimum sentences, a web of statutory bars discussed below in Part B.2 leaves very few prisoners eligible to file for *Alleyne* relief in habeas corpus or under Section 2255. As a result, under a retroactive application of *Alleyne*, most motions challenging mandatory minimums are still subject to automatic dismissal on limitations grounds. This result traces to AEDPA, the Anti-Terrorism and Effective Death Penalty Act of 1996.

of the trial." *Ibid.* In fact, the reasonable doubt standard structures the entire

course of proceedings by allocating the risk which must inform the government's

selection of strategy no less than the defense's. *See Winship*, 397 U.S. at 364

(standard of proof allocates risk of error "which both parties must take into

account"). After *Alleyne*, any mandatory minimum "a prosecutor can threaten to

charge" also embodies an "element that a defendant can threaten to contest at trial

and make the prosecutor prove beyond a reasonable doubt." *Blakely*, 542 U.S. at

311; *see also Vazquez*, 271 F.3d at 114-15 (Becker, J., concurring) (explaining

that treating aggravating facts as elements gives defendant "the advantage of

forcing the government to prove" them "beyond a reasonable doubt"). In short,

the rule of *Alleyne* restructures pretrial bargaining between the two sides in the

"system of pleas" that defines "criminal justice today." *Lafler v. Cooper*, 132 S.

Ct. 1376, 1388 (2012); *see Blakely*, 542 U.S. at 310-12 & nn.12, 13 (reviewing

relationship between rule of *Apprendi* and plea bargaining).

The impact of *Alleyne* "on the ground" may well be greater than was the

impact of *Gideon*. Prior to *Gideon*, only five states failed to provide counsel for

indigent defendants. *See* William M. Beaney, *The Right to Counsel*: *Past, Present,*

*and Future*, 49 Va. L. Rev. 1150, 1156 & n.29 (1963). And in all federal

prosecutions, indigent defendants already had a constitutional right to the

appointment of counsel. *Johnson v. Zerbst*, 304 U.S. 458, 463 (1938). As regards *Alleyne*, however, there are, as mentioned above, dozens of States which have enacted mandatory-minimum statutes; meanwhile, more than 27 percent of federal cases in which the defendant is sentenced involve a conviction of an offense carrying a mandatory minimum penalty. *USSC Mandatory Minimum Report* at 121.[8]

There is indication that Justice Harlan, for one, would have recognized that *Alleyne*, like other rules giving force to the reasonable doubt standard, satisfies what was to become *Teague*'s second prong. In *Mackey*, he described this prong as requiring "a showing that the procedures employed were fundamentally unfair." *Mackey*, 91 S. Ct. at 1184. And virtually contemporaneously, in *Winship*, he described the reasonable doubt standard as "an expression of fundamental

---

[8]     Despite *Alleyne*'s sweep, the government attempts to liken its reasonable doubt rule to far narrower strictures forming parts of the complex of Eighth Amendment law applicable in capital cases. *See* Gov't Br. 30-31. Citing decisions that bear on how mitigating evidence is to be considered, or even just on how parole ineligibility is to be considered, the government frames a conception of "incremental change" in which each increment represents a halting advance in a specialized line of jurisprudence. *Ibid.* (quoting *Beard v. Banks*, 542 U.S. 406, 419 (2004)). *Alleyne* is not of the same character. In overruling *Harris v. United States*, 536 U.S. 545 (2002), *Alleyne* altered how we define elements for purposes of enforcing the government's obligation to prove guilt beyond a reasonable doubt. This is not the sort of incremental advance that can be dismissed as narrow in sweep, particularly in light of the prevalence of mandatory minimums in federal and state sentencing today.

procedural fairness." *Winship*, 397 U.S. at 372 (Harlan, J., concurring).

**B.** ***Teague*'s extremely restrictive test should not be adopted for purposes of federal criminal cases.**

The government acknowledges, *see* Gov't Br. 27 & n.8, that *Teague* combined two limitations which Justice Harlan originally conceived and refined as separate and distinct alternatives upon the retroactive application of new procedural rules: whether violations of the rule substantially diminish accuracy, and whether the rule is essential to the fundamental fairness of a criminal proceeding. *Teague* thus takes as one premise that neither the interest in accuracy nor the interest in fairness can ever, in itself, outweigh the interest in finality. *See* Opening Br. 46. A second premise apparent in *Teague* is that retroactivity should not be decided on a pragmatic approach that balances the importance of redressing a particular kind of error against the effect such correction would have on reliance interests and the administration of justice. *Ibid.*

The government defends neither of these premises, and a federal court ought not adopt them for purposes of criminal cases instituted by the United States. Far from raising a "headlong" challenge, Gov't Br. 15, Mr. Reyes suggests no more than considered reflection upon the virtues of a pragmatic approach. The alternative is to adopt an ill-suited rule whose applicability the Supreme Court has

made clear is subject to question. *See Danforth v. Minnesota*, 552 U.S. 264 (2008).

Correcting *Alleyne* error fully vindicates the purpose of its rule by terminating ongoing punishment for aggravated conduct of which prisoners were not found guilty beyond a reasonable doubt. *See* Opening Br. 47. It upsets no significant reliance interests. *Id.* 47-48. And perhaps most importantly, it would occasion neither lengthy new proceedings nor require exhumation of old and possibly deteriorated evidence. *Id.* 49. Given its minimal threat to the interest of finality, the rule would warrant retroactive effect in federal criminal cases even were it not of "watershed" character within the meaning of *Teague*.

### 1.    A panel of this Court is not bound to apply *Teague*.

The government submits that nothing in Supreme Court precedent "at all suggest[s] that *Teague* does not apply to Section 2255 motions." Gov't Br. 19. In fact, the Court's conspicuous attention to the question speaks for itself. For one thing, the Court does not make a habit of dropping footnotes to highlight issues it deems lacking in merit. *See Chaidez v. United States*, 133 S. Ct. 1103, 1113 n.16 (2013) (reserving question of *Teague*'s applicability).

While the government cites *Danforth*'s aside that "[m]uch of the reasoning applicable to applications for writs of habeas corpus filed pursuant to § 2254

seems equally applicable in the context of § 2255 motions," 552 U.S. at 281 n.16, the *Danforth* opinion as a whole suggests something else. For one thing, *Danforth* paused to confirm that it would "express no opinion" on "whether the *Teague* rule applies to cases brought under 28 U.S.C. § 2255." *Id.* at 269 n.4. More importantly, what the Court found "abundantly clear" was that "the *Teague* rule of nonretroactivity was fashioned to achieve the goals of federal habeas while minimizing federal intrusion into state criminal proceedings." *Id.* at 280. Accordingly, *Danforth* held that when state courts identify error in their own cases, they may give broader relief than *Teague* allows federal courts to afford in state cases. 552 U.S. at 282. The converse must also be true: when federal courts identify error in their own cases, *Teague* does not limit the relief they may supply.

The government mistakenly reads Mr. Reyes, *see* Gov't Br. 15, to concede that a panel of this Court is without authority to revisit the statement in *Lloyd v. United States* that *Teague* "applies equally to a federal habeas corpus petitioner who wishes to collaterally attack his conviction." 407 F.3d 608, 611 (3d Cir. 2005). Given *Lloyd*'s silence as to rationale, *see* Opening Br. 42, the decision can only be presumed to rest on the mistaken premise that *Teague* dictated this conclusion. Since *Lloyd*, however, *Danforth* has made clear this is not so. 552 U.S. at 279-80. Because this "intervening development of law has 'weakened the

conceptual underpinnings'" of *Lloyd*, a panel of this Court is free to decide the issue of whether to apply *Teague*. *United States v. Adams*, 252 F.3d 276, 286 (3d Cir. 2001) (citation omitted); *George Harms Constr. Co. v. Chao*, 371 F.3d 156, 161-62 (3d Cir. 2004).[9]

### 2. *Alleyne* should be given effect on a first-time Section 2255 motion filed within the statute of limitations.

Turning to the merits, little need be said as to the government's stated concern that it would create undue disparity between state and federal prisoners were *Teague* not applied in federal criminal cases. *See* Gov't Br. 25. The opposite is true. State courts may adopt a pragmatic approach to retroactivity in state cases, *Danforth*, 552 U.S. at 282, and federal courts must be able to do so in federal ones.[10] The approach urged by Mr. Reyes simply accommodates the respects in which state and federal prisoners are differently situated. Whereas state prisoners petition for a writ canceling a state judgment that has been duly

---

[9]      It may be noted that the body of out-of-Circuit precedent cited by the government on the subject of *Teague*'s applicability uniformly predates *Danforth*. *See* Gov't Br. 16-17. Post-*Danforth* cases in the same Circuits have taken note of the consequent tension in their jurisprudence. *See Reina-Rodriguez v. United States*, 655 F.3d 1182, 1189-90 (9th Cir. 2011); *Duncan v. United States*, 552 F.3d 442, 444 n.2 (6th Cir. 2009).

[10]      For an example of a state approach hewing close to the pragmatic balancing test of *Linkletter v. Walker*, 381 U.S. 618 (1965), *see Policano v. Herbert*, 859 N.E.2d 484, 495 (N.Y. 2006).

entered and scrutinized by state reviewing courts, federal prisoners move simply to renew proceedings in their own case.  *See* 28 U.S.C. § 2255(e) (distinguishing "motion pursuant to this section" from "application for a writ of habeas corpus"). This makes the application of a new rule in a Section 2255 proceeding far less institutionally and constitutionally disruptive than in a habeas corpus proceeding initiated by a state prisoner.  *See* Opening Br. 41-42.

As the government stresses, there remains a strong interest in finality in federal criminal cases.  *See* Gov't Br. 20-24.  The question is therefore whether that interest can accommodate redress of the particular constitutional right concerned.  In the case of *Alleyne*, it can.  The spare remedy of resentencing the defendant without the erroneously imposed mandatory minimum neither disrupts substantial reliance interests nor threatens to impair the administration of justice. *See* Opening Br. 48-49.  Notably, the government nowhere disagrees.

What is more, only a small class of federal prisoners are eligible even to file claims for relief under *Alleyne*.  Under a statutory limiting provision, no prisoner who has previously litigated a Section 2255 motion can call upon *Alleyne* for relief unless the Supreme Court itself holds *Alleyne* retroactive.  *See* 28 U.S.C. § 2255(h)(2); *Simpson v. United States*, 721 F.3d 875, 876 (7th Cir. 2013); Opening Br. 49-50.  Meanwhile, even those prisoners who have never before

litigated a Section 2255 motion have less than three months left to file. 28 U.S.C. § 2255(f)(3).[11] Giving *Alleyne* retroactive effect therefore will not erase what remains a plainly "visible end to the litigable aspect of the criminal process." *Mackey*, 91 S. Ct. at 1179 (Harlan, J.).

In those few cases where a motion is not barred by statute, resentencing can go forward without requiring any excavation of "facts buried in the remote past." *Mackey*, 91 S. Ct. at 1179 (Harlan, J.). The sentencing judge will be able to rely on the existing trial record and, commonly, his or her own recollection. The only issue that need be resolved is whether a sentence below the mandatory minimum is warranted in the exercise of discretion. Judicial resources need not be much exhausted by permitting these determinations with respect to the narrow class of prisoners not statutorily barred from applying for relief. Resentencing, moreover, is not an unfamiliar procedure, but one in which district courts are well practiced, not least by virtue of remands from this Court on ground of error under 18 U.S.C. § 3553(a).[12]

---

[11]    The restrictions in the text apply equally to state prisoners. *See* 28 U.S.C. § 2244(b)(2)(A), (d)(1)(C). And in light of the statute of limitations, no prisoner may at this late date seek retroactive application of *Apprendi*, as the government perhaps insinuates. *See* Gov't Br. 13.

[12]    It is in this frame that Mr. Reyes has noted the finer calibration of

(continued...)

In defending the unyielding approach of *Teague*, the government draws not upon Justice O'Connor's exposition in *Teague* itself, but upon the opinions of Justice Harlan in *Mackey* and *Desist v. United States*, 394 U.S. 244 (1969). Yet as noted above, Justice Harlan did not endorse *Teague*'s rule that neither the interest in accuracy nor that of fairness can ever outweigh the interest in finality. *See Mackey*, 91 S. Ct. at 1181 ("I am now persuaded that those new rules cognizable on habeas ought to be defined, not by the 'truth-determining' test, but by the [fundamental fairness] test."). Moreover, Justice Harlan took care not to "neglect the force" of several virtues of retroactivity: "uniformity of ultimate treatment among prisoners," correction of abuses found "severely detrimental to societal interests," and promotion of the authority of the Court's constitutional rulings. *Mackey*, 91 S. Ct. at 1178.

While Justice Harlan did not "propose" to identify a distinction between Section 2255 and habeas corpus proceedings, Gov't Br. 25 (quoting *Mackey*, 91 S. Ct. at 1174 n.1), he stopped short of rejecting all possibility that further review

---

[12](...continued)
remedies available — *e.g.*, resentencing — on a motion under Section 2255 than on a petition for a writ of habeas corpus. *See* Opening Br. 43. The government is correct that Section 2255 accommodates remedies as broad as those available in habeas corpus, *see* Gov't Br. 23; the point, however, is that habeas corpus does not contemplate relief as narrow as is available under Section 2255.

might not teach otherwise.  Given that his project was one of revisiting the law of retroactivity at a broad level of generality, it was not Justice Harlan's concern to explore each and every question his approach might raise in future cases.  In any event, as noted above in Part A.2., Justice Harlan's description of the reasonable doubt standard in *Winship* tends to suggest he regarded rules like *Alleyne*'s to warrant retroactive effect even in habeas corpus proceedings brought by state prisoners.

Taking a pragmatic approach does not need to produce the "'strikingly divergent results,'" Gov't Br. 26, that have come to be attributed to *Linkletter v. Walker*, 381 U.S. 618 (1965).  As Justice Harlan explained long before *Teague*, the real problem was not *Linkletter* itself but the "conflicting and confusing flurry of 'retroactivity' opinions that commenced … with *Johnson v. New Jersey*, 384 U.S. 719 (1966)."  *Mackey*, 91 S. Ct. at 1182; *see also Desist*, 394 U.S. at 257 (pointing to *Johnson* and *Stovall v. Denno*, 388 U.S. 293, 299 (1967)).  As to *Linkletter* itself, Justice Harlan said, it "took as its point of departure the very distinction between direct and collateral review attack" that "is crucial to any analysis in this field."  *Mackey*, 401 U.S. at 696.  While further judicial engagement may yet refine or augment the guiding framework, what *Linkletter*'s approach aptly highlights is that the ultimate question should be one of

practicability.

Assessing practicability requires no more complex an inquiry than the one which has been occasioned in this Court time and again by *Teague*'s approach to constitutional fair trial guarantees. Rather than continue to engage in the "difficult legal analysis" that *Teague* can require, *Tyler*, 533 U.S. at 664, federal courts would better spend their energy and acumen considering whether particular types of constitutional violations can be remedied in Section 2255 proceedings without an intolerable impact on reliance interests or judicial resources. Fundamental as the interest in finality is, it is not so unyielding as to require that when error can be remedied at as low a cost as here, defendants must remain in prison under sentences imposed in violation of "fundamental constitutional protections." *Alleyne*, 133 S. Ct. at 2163 n.5.

## <u>CONCLUSION</u>

For the reasons stated above and in the opening brief, the matter should be remanded with instructions that Mr. Reyes be resentenced pursuant to the five-year mandatory minimum provided by 18 U.S.C. § 924(c)(1)(A). *See* Opening Br. 36-37.

Respectfully submitted,

/s/ Keith M. Donoghue
KEITH M. DONOGHUE
Assistant Federal Defender

SARAH S. GANNETT
Assistant Federal Defender

BRETT G. SWEITZER
Assistant Federal Defender
Chief of Appeals

LEIGH M. SKIPPER
Chief Federal Defender

# CERTIFICATE OF BAR MEMBERSHIP

It is hereby certified that Keith M. Donoghue is a member of the bar of the

Court of Appeals for the Third Circuit.

/s/ Keith M. Donoghue
KEITH M. DONOGHUE

DATE:  March 20, 2014

## CERTIFICATION

I, Keith M. Donoghue, Assistant Federal Defender, Federal Community Defender Office for the Eastern District of Pennsylvania, hereby certify that the electronic version of the attached reply brief was automatically scanned by Symantec Endpoint Protection, version 12.1, and found to contain no known viruses. I further certify that the text in the electronic copy of the reply brief is identical to the text in the paper copies of the reply brief filed with the Court.

/s/ Keith M. Donoghue
KEITH M. DONOGHUE

DATE:   March 20, 2014

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Keith M. Donoghue, Assistant Federal Defender, Federal Community Defender Office for the Eastern District of Pennsylvania, hereby certify that appellant's reply brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this reply brief contains 6,681 words, excluding the parts of the reply brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).  This reply brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this reply brief has been prepared in a proportionally spaced typeface using WordPerfect X5 for Windows 7 word count software in font size 14, type style Times New Roman.


/s/ Keith M. Donoghue
KEITH M. DONOGHUE

DATE:   March 20, 2014

# CERTIFICATE OF SERVICE

I, Keith M. Donoghue, Assistant Federal Defender, Federal Community Defender Office for the Eastern District of Pennsylvania, hereby certify that I have filed this same day, both in electronic and paper form, the *Reply Brief for Appellant* and served copies upon Filing User Bernadette McKeon, Assistant United States Attorney, through the Third Circuit Court of Appeals' Electronic Case Filing (CM/ECF) system.

/s/ Keith M. Donoghue
KEITH M. DONOGHUE

DATE:    March 20, 2014